UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| Mary L. Olsen,<br><br>    Plaintiff,<br><br>v.<br><br>Michael J. Astrue, Commissioner<br>of Social Security,<br><br>    Defendant. | 2:11-CV-189 JVB |

**Opinion and Order**

Plaintiff Mary Olsen seeks judicial review of Defendant Commissioner of Social Security's, final decision denying her application for Supplemental Security Income disability benefits under the Social Security Act. For the following reasons, the Court affirms the Commissioner's decision.

**A. Procedural Background**

On September 14, 2007, Plaintiff applied for Supplemental Security Income disability benefits alleging disability beginning April 10, 2004. (R. 127.) Plaintiff's claim was denied on November 7, 2007, and upon reconsideration on February 13, 2008. (R. 68 & 75.) On March 11, 2008, Plaintiff filed a written request for a hearing before Administrative Law Judge Sherry Thompson. (R. 82.)

On June 29, 2010, the ALJ determined that Plaintiff was not disabled and was thus not entitled to SSI benefits. (R. 21.) The ALJ found as follows:

    The claimant did not have a job since December 31, 2009, the date she as last insured. (R. 12.) The claimant's severe impairments are bilateral carpal tunnel syndrome and degenerative

disc disease. (R. 12.) The claimant's impairments do not meet or medically equal one of the listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. (R. 13.) The claimant's residual functional capacity indicates the ability to perform medium work as defined in 20 CFR 404.1567(c). (R. 13.) The claimant's work experience as a cosmetologist is past relevant work experience. (R. 20.) The claimant can work a significant number of jobs in the national economy. (R. 20.) The claimant has not been disabled from April 10, 2004 through December 31, 2009, the date last insured. (R. 21.)

The ALJ's opinion became final when the Appeals Council denied Plaintiff's request for review on April 1, 2011. (R. 1.)

### B. Factual Record

#### (1) *Plaintiff's Background*

At the time of the ALJ's decision, Plaintiff was 40 years old. (R. 144.) Plaintiff completed high school, received vocational training, completed two semesters of college, and is able to communicate in English. (R. 39.) Plaintiff worked as a hairdresser before her alleged disability. (R. 49.)

#### (2) *Medical Evidence*

In August 2004, Plaintiff met with Dr. Anton Thompkins for a back pain evaluation. (R. 400.) Dr. Thompkins ordered Plaintiff's medical history which showed degenerative disk disease at lumber spine L3-4 and L5-S-1. (R. 417.) Dr. Thompkins prescribed physical therapy, anti-inflammatories, and a follow-up visit to check Plaintiff's progress. (R. 419.)

From September 2004 to March 2005, Plaintiff met with Dr. Nirmala Murugavel, an internist, in attempt to "eliminate the need for surgery." (R. 232 & 246.) Dr. Murugavel diagnosed Plaintiff with lumbar radiculopathy and prescribed physical therapy. (R. 232.) Plaintiff attended twenty-three patient visits. (R. 232.)

In June 2005, Plaintiff met with Dr. Jeffrey Demko, a chiropractor. (R. 298.) Plaintiff met Dr. Demko three times for treatment of her shoulders, hips, and knees.

From February 2006 to October 2006, Plaintiff attended Integrated Pain Management Clinic. (R. 308.) Plaintiff's diagnosis included sciatica, lumber DBC, LBP, and spasms. (R. 309.)

In September 2006, Plaintiff met with Dr. Christopher Wirsing at Physicians for Women. (R. 325 & 326.) Dr. Wirsing prescribed a diagnostic left sided digital mammography. (R. 327.) Dr. Yazan Kaakaji performed the procedure and found two small benign simple cysts. (R. 329.) Afterwards, Dr. Maximo Bleza performed a bilateral digital mammogram with CAD and found "no evidence of a dominate mass." (R. 330.)

From October 2006 to February 2007 Plaintiff met with Kristen Gadsdon, Treating Physical Therapist at Performance Physical Therapy. (R. 366–380.) Ms. Gadsdon diagnosed Plaintiff with unspecified disorders of back. (R. 387.) Ms. Gadsdon recommended that Plaintiff continue physical therapy and begin home exercise. (R. 387.)

From April 2007 to July 2007, Plaintiff met with Dr. Faleh Attassi, an acupuncturist. (R. 428–433.) Plaintiff underwent therapeutic treatment and showed "very good" improvement. (R. 428.)

In July 2007, Plaintiff met with Dr. Patrick Sweeney. (R. 454.) Dr. Sweeney ordered an MRI of the lumbar spine. (R. 454.) He diagnosed Plaintiff with degenerative disk disease at lumber spine L3-4 and L5-S-1. (R. 454.)

In August 2007, Plaintiff met with Dr. Ramesh Kanuru, surgeon at Advanced Pain Consultants. (R. 458.) Dr. Kanuru diagnosed Plaintiff with degenerative disk disease at lumbar spine L3-4 and L5-S-1. (R. 458.) Dr. Kanuru ordered a transforminal epidural at L4 and L5. (R. 458.) Following the procedure, Dr. Kanuru noted Plaintiff's condition as "good." (R. 459.)

On October 24, 2007, Plaintiff met with State agency medical physician, Dr. J.V. Corcoran for her residual functional capacity assessment. (R. 569.) Dr. Corcoran diagnosed Plaintiff with left lumbar radiculities and bulging lumbar disc 14/5 and 15/s1. (R. 562.) He found Plaintiff's impairment-related symptoms and functional limitations "partially credible." (R. 567.)

On November 7, 2007, Plaintiff met with Dr. Joseph A. Pressner as part of her residual functional capacity assessment for a psychiatric review. (R. 570.) Dr. Pressner found no medical impairment or coexisting mental impairment. (R. 570.)

From June 2003 to October 2007, Plaintiff met with Dr. Brian McGuckin, a chiropractor. (R. 472–498.) Dr. McGuckin adjusted Plaintiff's back.

On March 2008, Plaintiff met with Dr. Joseph Schwartz for numbness in her hand. (R. 735.) Dr. Schwartz found that Plaintiff had a cyst but retained full range of motion in her hand. (R. 736.) Plaintiff opted to have the cyst surgically removed. (R. 736.)

From March 2007 to February 2010, Plaintiff met with Dr. Candice Yu-Fleming. She treated Plaintiff for, among other things, lower back pain, nightmares, and constipation. (R. 684–703.) Dr. Yu-Fleming did not note a disability that would prevent Plaintiff from working.

### (3) *Plaintiff's Testimony*

At the hearing, Plaintiff testified that she had a driver's license. Plaintiff stated that she graduated from high school and attended two semesters of college. (R. 38 & 39.) Plaintiff also

spoke about her past job as a hairdresser. (R. 39.) Plaintiff said she is not currently working. (R. 39.) Plaintiff testified that she had difficulty using her hands in a manner that would allow her to resume work as a hairdresser. (R. 28–29.) Plaintiff stated that she stopped working as a hairdresser because she injured her back in 2004. (R. 30.)

Plaintiff testified that she takes Zanaflex[1], Ibuprofen, and Vicodin. (R. 43.) Plaintiff told the ALJ that these medications constipate her and make her sleepy. (R. 43.) Plaintiff also explained that her husband assists her in daily routines. (R. 47.) Plaintiff said she vacuums, does laundry, and goes grocery shopping. (R. 47–48.) However, Plaintiff testified that her husband carries the laundry because she is not able to do so. (R. 47.)

**(4) *Vocational Expert's Testimony***

Vocational Expert ("VE") Thomas Grzesik testified at Plaintiff's hearing (R. 55.) The ALJ presented the VE with a hypothetical question:

> Let's assume an individual has the same age, education, and work experience as the claimant, and has residual functional capacity to perform medium work, except she frequently climb [sic] ramps and stairs and occasionally climb [sic] ladders, ropes, and scaffolds, and get [sic] frequently balance, stoop, kneel, crouch and crawl. Would this individual be able to perform any of her past relevant work?

(R. 57.) In response, the VE opined that the individual could perform the tasks of a hairdresser and noted that Plaintiff could also work several other jobs; in the Chicago region, that includes Northwest Indiana, "there are 7,000 hand packager jobs, 6,000 feeder off bearer jobs, and 16,000 dining room attendant jobs." (R. 57–58.)

---

[1] *Tizanidine* (Zanaflex) relieves the spasms, cramping, and tightness of muscles caused by medical problems such as multiple sclerosis or certain injuries to the spine, http://www.mayoclinic.com/health/drug-information/DR601495 (Last visited March 24, 2012).

5

The ALJ presented the VE a second hypothetical that presented the same conditions but added a sedentary limitation (R. 59.) Under this hypothetical, the VE opined that the individual had access to "perform 8,000 call-out operator jobs, 7,500 information clerk jobs, and 1,000 order clerk jobs." (R. 58–59.)

### (5) *ALJ's Decision*

The ALJ concluded that Plaintiff was not disabled under the Social Security Act. (R. 21.) The ALJ classified Plaintiff's bilateral carpal tunnel syndrome and degenerative disc disease disorder as severe impairments. (R. 12.) However, the ALJ also found that Plaintiff's other impairments did not meet or medically equal one of the listed impairments in "20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (R. 13.)

The ALJ found that Plaintiff did not meet "Listing 1.02 . . . and [Listing] 1.04" criteria because no "gross anatomical deformity has been identified and there is no evidence showing that the claimant is unable to perform fine and gross movements effectively such that she has an extreme loss of function of both upper extremities that interferes very seriously with her ability to independently initiate, sustain or complete activities." (R. 13.)

The ALJ found that Plaintiff's statements regarding her own personal care contradicted the alleged severity of her impairments. (R. 18.) When determining Plaintiff's residual functional capacity, the ALJ "consider[ed] the evidence in the record and the testimony at the hearing." (R. 19.) The ALJ emphasized the inconsistencies between Plaintiff's testimony and the objective medical evidence. (R. 18–20.) The ALJ gave "little weight" to the opinions of Plaintiff's physical therapist, Ms. Gadsdon. (R. 19.) The ALJ found inconsistencies between Ms. Gadsdon's medical report and clinical observations. (R. 19.) Also, the ALJ found that Plaintiff's physical

6

limitation claims were inconsistent with the medical evidence of record and the ALJ's own observations. (R. 18–19.) Lastly, the ALJ relied on the VE's testimony that, given Plaintiff's physical limitations, she was still capable of performing past employment or certain jobs within the national and local economy. (R. 21.)

**C. Standard of Review**

This Court has the authority to review Social Security Act claim decisions under 42 U.S.C. § 405(g). The Court will uphold an ALJs decision if it is reached under the correct legal standard and supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This Court will not reconsider facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). This Court will, however, ensure that the ALJ built an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may access the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

**D. Disability Standard**

To qualify for Disability Insurance Benefits the claimant must establish that he or she suffers from a disability. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

7

than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration established a five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) He is not presently employed;
> (2) His impairment is severe;
> (3) His impairment is listed or equal to a listing in 20 CFR. § 404, Subpart P, Appendix 1;
> (4) He is not able to perform his past relevant work; and
> (5) He is unable to perform any other work within the national and local economy.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### E. Analysis

#### (1) *Substantial Evidence Supports the ALJ's Credibility Findings*

In reviewing the ALJ's decision, the court must give conclusive effect to those factual findings supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This Court will not reconsider facts, reweigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Plaintiff contends that the ALJ erred in her credibility finding. The ALJ's credibility determinations will not be overturned unless they were "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Under Social Security Ruling 96–7p, the ALJ's determination regarding claimant credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."

Here, the ALJ did not merely dismiss Plaintiff's allegations without any basis. Instead, the ALJ explained that she believed that Plaintiffs suffered from some abnormalities, but the medical evidence showed that her impairments were mild in nature. (R. 14--15.). Plaintiff contends that the ALJ erred in evaluating her allegation of numbness in her hands but the ALJ discussed a February 2008 EMG report that showed moderate findings in Plaintiff's left hand (R. 18; *see also* R. 683); the ALJ also pointed out that Plaintiff subsequently underwent surgery on the left wrist (R. 18; *see also* R. 725--26). The ALJ also relied on medical findings of Plaintiff's physicians (Dr. Murugavel, Dr. Attassi, Dr. Kanuru, Dr. Yu- Fleming, Dr. Schwartz, Dr. McGuckin and Dr. Thompkins), all of whom concluded that Plaintiff's condition was either improving or required physical therapy. Plaintiff's physicians did not find a disabling impairment or report that Plaintiff was not able work.

In addition, the ALJ noted that, during the hearing, she observed Plaintiff's use of her hands, and the ALJ concluded that Plaintiff's actions were inconsistent with Plaintiff's allegation that she always dropped things. (R. 18.) Such considerations are allowed in the Seventh Circuit. *See Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) ("The hearing officer had an opportunity to observe Powers for an extended period of time and could gauge whether her demeanor,

9

behavior, attitude and other characteristics suggested frankness and honesty and were consistent with the general bearing of someone who is experiencing severe pain."). The ALJ's credibility assessment in this case was not "patently wrong," and the Court will not reverse her credibility findings.

## (2) *Substantial Evidence Supports the ALJ's RFC Finding*

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform her previous employment, as a cosmetologist, "which is classified by the Dictionary of Occupational Titles classifies as skilled work, SVP-6, performed at the light exertional level" (R. 20), and several other jobs in the national economy at the medium exertional level. The ALJ made these determinations in light of its credibility findings and on the basis of the medical evidence. The ALJ pointed out that her RFC finding was consistent with the opinion of the state agency physician who reviewed Plaintiff's file in October 2007, as well as the opinion of another doctor who reviewed Plaintiff's file in February 2008. (R. 19--20.)

Plaintiff argues that the ALJ failed to explain what evidence she relied on in determining that she was unlimited in her ability to sit, stand and walk. Plaintiff also argues that the ALJ failed to take into account Ms. Gadsdon's---the treating therapist---opinion that "Ms. Olsen would frequently experience pain severe enough to interfere with attention and concentration needed to perform even simple work tasks, and she could only stand/walk 2 hours and sit 4 hours in an 8-hour workday." (R. 17.)

"An ALJ may not ignore an entire line of evidence that is contrary to her findings," *Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir.1999); rather she must "articulate at some minimal level [her] analysis of the evidence" to permit an informed review. *Clifford v. Apfel*, 227

10

F.3d 863, 872 (7th Cir. 2000). Here, the ALJ reviewed and considered all substantial medical evidence, including Ms. Gadsdon's statements which she found to be inconsistent with the record as a whole. The ALJ also highlighted Ms. Gadsdon's contradictory statements from December 2006 to January 2008. Additionally, the ALJ noted that Dr. Kanuru's report lacked credibility because he repeated Plaintiff's statements that he took over the phone. The ALJ also supported her decision with evidence from the State agency medical physician's reports and discussed all the reasons for denying Plaintiff's application for disability benefits.

While an ALJ is not required to address every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits. In this case, the ALJ supports her finding with substantial evidence to permit an informed review, and therefore, the Court affirms the ALJ's residual functional capacity finding.

**(3) *Substantial Evidence Supports the ALJ's Finding that Plaintiff Could Perform a Significant Number of Jobs in the Economy***

Having determined Plaintiff's RFC, the ALJ relied upon the opinion of the vocational expert to find that Plaintiff could perform her past job as cosmetologist, both as the job was generally performed and as Plaintiff actually performed it. (R. 20.) Plaintiff does not challenge the ALJ's conclusion that an individual with the limitations described by the ALJ at her hearing could perform her past work. Accordingly, the Court affirms that finding.

11

## F. Conclusion

For the foregoing reasons, the Court affirms the Commissioner's decision.

SO ORDERED on September 21, 2012.

 S/ Joseph S. Van Bokkelen

JOSEPH S. VAN BOKKELEN

UNITED STATES DISTRICT JUDGE
